IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS- EASTERN DIVISION

| | |
|---|---|
| DARRELL BYTHER,<br><br>    Plaintiff,<br><br>v.<br><br>ERNESTINE B. BECK-FULGHAM, both individually and in her official capacities as Village Manager, JOSEPH ROUDEZ III, both individually and in his official capacities as Mayor, and UNIVERSITY PARK,<br><br>    Defendants. | Case No. 23-cv-05807<br><br>The Honorable Judge Charles P. Kocoras |

### DEFENDANTS' ANSWER TO COMPLAINT

Defendants, Ernestine B. Beck-Fulgham, Joseph Roudez, III and University Park, by and through their attorneys, Odelson, Murphey, Frazier & McGrath, Ltd. answer Plaintiff's Complaint as follows:

### NATURE OF THE CASE

1. At all times relevant, Byther was the Director of Public Works for the Village of University Park. Byther's problems with the Village began when he was retaliated against for what the Defendants perceived to be an allegiance with the former police chief, Deborah Wilson ("Wilson"). Defendants retaliated against Byther by stripping him of his supervisory rights, barring him from Village property, interfering with his FMLA leave, and violating his due process rights by unlawfully removing him as Director of Public Works and terminating him as an employee of the Public Works' Department without "just cause."

    **ANSWER:** **Defendants admit Byther was the Director of Public Works for the Village of University Park from approximately April 1, 2019 to February 22, 2022 and deny the remaining allegations contained in Paragraph 1.**

### JURISDICTION AND VENUE

2. Jurisdiction over the federal claims arises under 42 U.S.C. §§ 1983, 1988, 28 U.S.C. §§ 1331, 1343, and the First, Fifth, and Fourteenth Amendments to the United States Constitution, Title VII Byther of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq*.

    **ANSWER:** **Defendants admit jurisdiction over the federal claims arises under 28 U.S.C. §§ 1331 and 1343 and deny the remaining allegations contained in Paragraph 2.**

3. The Court also has jurisdiction over the state law claims asserted in this action under 28 U.S.C. § 1367 because the state law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

   **ANSWER:** Defendants admit the allegations contained in Paragraph 3.

4. Venue is proper in this Court because Defendants' acts complained of occurred in University Park, Illinois, Will County, which is within the jurisdictional boundaries of this Court.

   **ANSWER:** Defendants admit the allegations contained in Paragraph 4.

## PARTIES

5. Plaintiff, Darrell Byther (hereafter "Plaintiff" or "Byther"), is a resident of Illinois. He was employed full-time with the Village from May 21, 2007 until his wrongful termination on or about February 22, 2022.

   **ANSWER:** **Defendants deny Plaintiff was wrongfully terminated and admit the remaining allegations contained in Paragraph 5.**

6. Byther's place of employment was the Village of University Park, Public Works Department, which is in Will County, Illinois.

   **ANSWER:** Defendants admit the allegations contained in Paragraph 6.

7. At all times relevant, Defendant Ernestine Beck-Fulgham ("Beck-Fulgham") was appointed as the Village Manager. She is a final policymaker at all times relevant. She engaged in the conduct complained of while acting under the color of law. She is sued in his official and individual capacities.

   **ANSWER:** **Defendants admit Beck-Fulgham was the appointed Village Manager for the Village of University Park until approximately July 19, 2022 and engaged in the conduct complained of while acting under color of law and is sued in her official and individual capacities. Defendants lack knowledge or information sufficient to form a belief as to whether she was a final policymaker at all times relevant, and therefore deny same and deny the remaining allegations contained in Paragraph 7.**

8. Defendant Joseph Roudez III ("Roudez") is an elected official serving as Mayor of the Village of University Park. He is a final policymaker. He engaged in the conduct complained of while acting under the color of law. He is sued in his official and individual capacities.

2

**ANSWER:** **Defendants deny Roudez is a final policymaker and admit the remaining allegations contained in Paragraph 8.**

9. Defendant, Village of University Park, Illinois (hereafter the "Village") is a manager-managed municipal corporation that operates as a home-rule government unit.

**ANSWER:** **Defendants admit the Village of University Park operates as a managerial form of municipal government and is also home-rule and denies the remaining allegations contained in Paragraph 9.**

10. Defendant Village is a unit of local government for purposes of the FMLA, 29 U.S.C. §2611.

    It is named in its capacity as indemnitor pursuant to 745 ILCS §§ 10/1 - 202 and 9 - 102. *See Carver v. Sheriff of LaSalle County*, 324 F.3d 947, 948 (7th Cir. 2003).

**ANSWER:** **Defendants admit the Village is a unit of local government and is named in its capacity as indemnitor pursuant to 745 ILCS 10/9-102 and denies the remaining allegations contained in Paragraph 10.**

11. The Village has indemnification obligations for wrongful acts committed by its officials, employees, and agents. See 745 ILCS §§ 10/1-202 and 9-102. Accordingly, it is responsible for the challenged actions of the individual Defendants and the Village.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 11.**

### EXHAUSTION OF ADMINISTRATIVE RELIEF

12. On or about March 30, 2022, Byther filed an Equal Employment Opportunity Office ("EEOC") alleging retaliation, violations of the FMLA and the discriminatory denial of sick leave benefits that led up to his unlawful termination of employment on or about February 22, 2022.

**ANSWER:** **Defendants admit the allegations contained in Paragraph 12.**

13. The EEOC Charge Number is: 440-2022-04949 and IDHR Charge Number is 22 CR 2468.

**ANSWER:** **Defendants admit the allegations contained in Paragraph 13.**

14. Byther received the EEOC right-to-sue letter on or about May 22, 2023, a copy is attached hereto as Exhibit A and IDHR right-to-sue letter June 1, 2023, a copy is attached hereto as Exhibit B.

**ANSWER:** **Defendants admit the allegations contained in Paragraph 14.**

### FACTS COMMON TO ALL CLAIMS

### Village Manager's Powers

15. According to Village municipal code, "[t]he Manager shall appoint, suspend[,] or remove all employees of the Village where not otherwise provided by statute. All employees hired by the Manager shall be at such compensation as may be set or authorized by the Board of Trustees. All employees shall perform their duties subject to the manager's direction or that of the superior to whom the Manager may assign such employee." *Vill. Univ. Park Ord.* § 220-05.

    **ANSWER:** Defendants admit Paragraph 15 accurately recites Vill. Univ Park. Code Sec. 220-04 and denies the remaining allegations contained in Paragraph 15.

16. "All appointive offices of the Village shall be filled by appointment by the Manager except where otherwise provided by law, and the Manager shall report to the President and Board of Trustees such appointments, or any removal from office, made by him as soon as possible after the appointment or removal …" *Id.*

    **ANSWER:** Defendants admit Paragraph 16 accurately recites a portion of Vill. Univ. Park Code Sec. 220-05.

17. "The Manager may suspend such officials and report his reasons for suspension to the Village Board for its concurrence." *Id.*

    **ANSWER:** Defendants admit Paragraph 17 accurately recites a portion of Vill. Univ. Park Code Sec. 220-05, but deny this portion applies to the Director of Public Works.

18. "The Manager may remove or discharge such officials, but only after having reported the reasons for that action to the Village Board and having the Village Board confirm the Manager's decision ..." *Id.* at § 220-055.

    **ANSWER:** Defendants admit Paragraph 18 accurately recites a portion of Vill. Univ. Park Code Sec. 220-05, but deny this portion applies to the Director of Public Works.

19. "The Manager shall be charged with the responsibility of administering the personnel rules, regulations and policies of the Village, shall maintain all records of those persons employed by the Village and shall cause to be maintained an accurate and up-to-date , status record of each person employed by the Village." *Id.*

    **ANSWER:** Defendants admit Paragraph 19 accurately recites a portion of Vill. Univ. Park Code Sec. 220-055.

20. "The Manager shall administer all personnel rules, regulations and policies in a fair and just manner. In his or his administration of the rules, regulations and policies, the Manager shall be responsible for upholding all Federal and State regulations to which the Village, as an employer, must adhere. The Manager shall develop procedures to facilitate the filing of a grievance by an employee. Such procedures shall be published in a 'Village Manual of Personnel Rules, Regulations and Policies.'" *Id.*

   **ANSWER:** Defendants admit Paragraph 20 accurately recites a portion of Vill. Univ. Park Code Sec. 220-055.

21. "The Manager shall review, update and, from time to time, establish new and revised personnel rules, regulations[,] and policies. The Manager shall consult, from time to time, with all department heads to ensure a coordinated effort in administering the personnel responsibilities of the Village." *Id.*

   **ANSWER:** Defendants admit Paragraph 21 accurately recites a portion of Vill. Univ. Park Code Sec. 220-055.

## Byther's Background

22. Byther has worked for the Village since May 21, 2007, when he was hired as a maintenance technician.

   **ANSWER:** Defendants admit Byther was hired as a maintenance technician in May of 2007 and deny the remaining allegations contained in Paragraph 22.

23. In 2007, Byther was promoted to public works' foreman where he was covered by a collective bargaining agreement with AFSCME LOCAL 3837.

   **ANSWER:** Defendants deny the allegations contained in Paragraph 23.

24. Pursuant to Village ordinance, "[t]he Department of Public Works shall consist of the Director of Public Works, who shall be appointed by the Manager. The Director shall have control and supervision over all employees assigned to the Public Works Department, subject to the control of the Manager. The Manager shall serve as the ex-officio Public Works Director until this position is filled by appointment." *Vill. Univ. Park Ord.* §226-01.

   **ANSWER:** Defendants admit Paragraph 24 accurately recites portions of Vill. Univ. Park Code. Sec. 226-01.

25. On or about December 2018 until he was appointed as the Director of Public Works Byther was appointed as the acting Director of Public Works.

   ANSWER: Defendants admit the allegations contained in Paragraph 25.

26. Byther was appointed as the Director of Public Works on or about April 8, 2019, by the then-Village manager.

   ANSWER: Defendants admit the allegations contained in Paragraph 26.

27. On or about April 1, 2019, Defendant Village notified Byther in writing that he "satisfied your probationary period" and further informed him that he was able to "return to your union position of Forman - Public Works Department at time during employment with the Village of University Park with 30 days [sic] notice to the Village and AFSCME however you can still be dismissed for cause for misconduct or performance related issues based on the standards of the Village of University Park Personnel Handbook" as the communication below indicates:

   ANSWER: **Defendants admit the Village issued the letter attached to Paragraph 27 to Byther, admit the contents of the letter and deny any allegations contained in Paragraph 27 that do not accurately recite the provisions of the letter.**

28. At the time of Byther's termination, his annual salary as Director of Public Works was $80,0000 with medical benefits and other fringe benefits.

   ANSWER: Defendants admit the allegations contained in Paragraph 28.

### Events Leading to Byther's Termination

29. Byther's problems with the Village began when he was asked to give a statement during an investigation against Deborah Wilson. On belief, the Defendants perceived Byther as having an allegiance with Wilson.

   ANSWER: Defendants deny the allegations contained in Paragraph 29.

### Village Property is Missing from the Golf Course

30. The Village owns the University Park Golf Club and Conference Center ("Golf Course"), an 18-hole championship golf course located within the city limits. C.H.W. Management Group L.L.C. leases the golf course from the Village.

   ANSWER: **Defendants admit the Village owns the Golf Course which is located within the Village limits and denies the remaining allegations contained in Paragraph 30.**

31. On November 4, 2021, Byther and his foreman, Dontrell Brown, went to the Golf Course's garage to retrieve one of the Village's tire changers.

    **ANSWER: Defendants admit Byther and Brown went to the Golf Course on November 4, 2021 and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 31 and therefore deny same.**

32. A CHW employee, Putman, told them that his Manager, Sonia Coffee, directed him not to allow any Village employees onto the property because they were trespassers. The situation escalated with Putman (a Caucasian male) calling Byther a "nigger."

    **ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 and therefore deny same.**

33. Wilson called Byther and requested police assistance at the Golf Course when Putman denied Wilson access to the garage despite his being in his full police uniform.

    **ANSWER: Defendants deny the allegations contained in Paragraph 33.**

34. Putman also denied Byther access to the garage.

    **ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34 and therefore deny same.**

35. Byther and Brown accessed the garage through an opening and discovered that the tire changer and other Village property were missing.

    **ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35 and therefore deny same.**

36. As the Director of Public Works, Byther had every right to access the Golf Course's garage to retrieve Village property.

    **ANSWER: Defendants deny the allegations contained in Paragraph 36.**

37. Village ordinance states in relevant part: "[t]he Director of Public Works shall have charge of and supervision over all public property of the Village, including all streets, parks, parkways, sidewalks, municipal buildings and all other property of the Village not specifically assigned to some other officer. All construction, repair or maintenance work conducted by the Village shall be done by or under the supervision of the Director with the assistance of the Engineer

… The Director shall be responsible for keeping all Village maps and plats current, and for the procurement, care and custody of such maps, plats and plans necessary to the efficient conduct of the Department of Public Works. *Vill. Univ. Park Ord.* §226-02.

**ANSWER:** **Defendants admit Paragraph 37 accurately recites portions of Vill. Univ. Park Code Sec. 226-02.**

38. The Director of Public Works "shall also have charge of and be responsible for the condition of all motor vehicles, trucks and other equipment of the Village, except as otherwise provided, and of all buildings or places in which the same are housed or kept." *Id.*

**ANSWER:** **Defendants admit Paragraph 38 accurately recites portions of Vill. Univ. Park Code Sec. 226-02.**

39. Wilson wrote a police report for the missing Village property.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 39.**

### Byther Requests FMLA Leave

40. On January 28, 2022, Byther sought and took medical leave pursuant to the FMLA for qualifying serious health conditions by turning in FMLA Form WH-380F filled out by his treating physician to the Village's Human Resources Director, Jacelia Kelly ("Kelly").

**ANSWER:** **Defendants admit Byther turned in an uncompleted form WH-380F to Jacelia Kelly on January 28, 2022 and deny the remaining allegations contained in Paragraph 40.**

41. Kelly confirmed that Byther's FMLA forms were correctly filled out and that the Village did not need anything additional from him.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 41.**

42. Byther went on FMLA leave on or about January 31, 2022.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 42.**

43. At all times relevant, Byther was eligible for FMLA leave in that he was employed by Defendant Village for more than 12 months before he requested leave in issue in this case, and had worked more than 1,250 hours for Defendant Village in that same period.

**ANSWER:** **Defendants admit Byther was employed by the Village for more than 12 months before January 28, 2022 and had worked more than 1,250 hours for the Village and deny the remaining allegations contained in Paragraph 43.**

44. Byther did not exhaust his annual entitlement to leave when he requested to be off from January 31, 2022, to February 28, 2022.

    **ANSWER:** **Defendants deny Byther requested to be off from January 31, 2022 to February 28, 2022 and admit the remaining allegations contained in Paragraph 44.**

45. On or about February 3, 2022, Beck-Fulgham sent Byther a letter to have his healthcare provider fill out FMLA Form WH-380F even though he had already provided that document to the Village's Human Resources Director.

    **ANSWER:** **Defendants admit Beck-Fulgham sent Byther a letter on February 3, 2022 and deny the remaining allegations contained in Paragraph 45.**

46. Instead of advising Byther of his rights under FMLA, Defendant Beck-Fulgham intended to deny or interfere with his FMLA leave.

    **ANSWER:** **Defendants deny the allegations contained in Paragraph 46.**

47. Specifically, Beck-Fulgham ordered Byther to "fill out a formal written request for medical leave including beginning and ending dates of said leave of absence to the village manager per policy," which contravenes Byther's right to seek intermittent leave under FMLA.

    **ANSWER:** **Defendants admit Beck-Fulgham ordered Byther to fill out a formal request for medical leave and deny the remaining allegations contained in Paragraph 47.**

48. Defendant Beck-Fulgham then ordered him to return "all village property such as [his] village vehicle, keys to all departments and vehicles, cell phone, and laptop or tablet." [sic]

    **ANSWER:** **Defendants admit the allegations contained in Paragraph 48.**

49. Byther took the additional requests and the request to return all of his Village property within 24 hours of receiving Defendant Beck-Fulgham's letter to be a warning to not take FMLA leave.

    **ANSWER:** **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 49 and therefore deny same.**

50. Despite Byther's compliance with Defendant Beck-Fulgham's extra hurdles, on February 22, 2022, Defendant Beck-Fulgham unilaterally terminated Byther using a myriad of pretextual misconduct while he was still on FMLA leave as depicted in the letter below:

    **ANSWER:** **Defendants admit Beck-Fulgham terminated Byther as depicted in the letter attached to Paragraph 50 of Plaintiff's Complaint, admit the contents of the letter and deny the remaining allegations contained in Paragraph 50.**

51. None of the alleged reasons in the February 22, 2022, letter were valid reasons to terminate Byther.

**ANSWER:** Defendants deny the allegations contained in Paragraph 51.

52. For example, several of the incidents dated back to 2019 or 2020 and Defendants never informed Byther that they took issue with Byther's work.

**ANSWER:** Defendants admit several of the incidents dated back to 2019 or 2020 and deny the remaining allegations contained in Paragraph 52.

53. Another stated reason for terminating Byther was based on his purported "failure to appropriately request time off," which is not the proper basis for denying Byther's leave for the period that the certification was late.

**ANSWER:** Defendants admit a stated reason for terminating Byther was based on his failure to appropriately request time off and deny the remaining allegations contained in Paragraph 53.

54. After Defendant Beck-Fulgham unlawfully terminated Byther, Defendants Joseph E. Roudez III and Becks-Fulgham began a smear campaign to defame Byther.

**ANSWER:** Defendants deny the allegations contained in Paragraph 54.

55. Of the false and injurious statements made by Defendants Roudez III and Beck-Fulgham, each or collectively, Defendants falsely accused Byther of stealing money from the Village's golf course and of having an affair with former police chief, Deborah Wilson.

**ANSWER:** Defendants deny the allegations contained in Paragraph 55.

56. These rumors are false as both Byther and Wilson are married and in retaliation for him testifying on behalf of Wilson in her arbitrary disciplinary matter against the Golf Course.

**ANSWER:** Defendants deny the remaining allegations contained in Paragraph 56.

### Defendants Eviscerated Byther's Procedural Due Process Rights

*Violation 1 – Defendants Failed to Remove Byther as Director of Public Works Properly*

**Paragraphs 57 – 69 are addressed in Defendants' Motion to Dismiss Counts I, IV, V, VI and VII and therefore no answer is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraphs 57 – 69.**

## COUNT I—42 U.S.C. § 2000e(3)(a) RETALIATION
### Byther v. Village of University Park, Illinois

**Paragraphs 70 - 76 are addressed in Defendants' Motion to Dismiss Counts I, IV, V, VI and VII and therefore no answer is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraphs 70-76.**

## COUNT II – FMLA INTERFERENCE
### Byther v. Defendants Village and Beck-Fulgham

77. Byther realleges each paragraph of this Complaint as if fully restated here.

  **ANSWER:** Defendants restate their Answers to each paragraph of this Complaint as if fully restated here.

78. The FMLA creates a direct private right of action for employees such as Byther to sue for redress for violations of the Act. See 29 U.S.C. § 2617(a)(2).

  **ANSWER:** Defendants admit the FMLA creates a private right of action for employees to sue for redress for violations of the Act and deny the remaining allegations contained in Paragraph 78.

79. To make a claim for interference under the FMLA, a plaintiff must plead and prove that (1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied his FMLA benefits to which he was entitled. See, e.g., *Burnett v. LFW, Inc.*, 472 F.3d 471, 482 (7th Cir. 2006); see 29 U.S.C. § 2615.

  **ANSWER:** Defendants admit the allegations contained in Paragraph 79.

80. At all times, Byther was an FMLA eligible employee because he was employed by Defendant for more than 12 months prior to his request for leave in issue in this case in February 2022, and had worked more than 1,250 hours for Village Defendant in that same period.

  **ANSWER:** Defendants admit Byther was employed by the Village for more than 12 months prior to February 2022 and worked more than 1,250 hours for the Village and deny the remaining allegations contained in Paragraph 80.

81. Defendant Beck-Fulgham in her official capacity has at all times been an employer within the meaning of the FMLA.

  **ANSWER:** Defendants deny the allegations contained in Paragraph 81.

11

82. Defendant Beck-Fulgham individually has at all times been a person acting in the interest of the Village with respect to its employees who exercise complete supervisory control over all aspects of Byther's terms and conditions of employment, as well as the manner of his work performance.

   **ANSWER: Paragraph 82 is a legal conclusion to which no answer is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraph 82.**

83. Defendant Beck-Fulgham interfered with Byther's FMLA rights in multiple ways including:

    a. failing to provide Byther with written notice of his FMLA rights,
    b. failing to advise Byther of his right to take intermittent leave,
    c. misleading him regarding his FMLA rights,
    d. failing to designate his leave as FMLA qualifying,
    e. failing to advise him when his leave qualified as FMLA leave,
    f. discouraging Byther from taking leave by adding additional obstacles in the way of his FMLA leave, and ultimately terminating his employment.

   **ANSWER: Defendants deny the allegations contained in Paragraph 83 and each subpart thereof.**

84. Byther was entitled to take FMLA leave in January 2022 because he was an eligible employee and because he had not exhausted his twelve weeks of leave authorized by the Act.

   **ANSWER: Defendants deny Byther was entitled to take FMLA leave in January 2022 and admit the remaining allegations contained in Paragraph 84.**

85. Byther provided sufficient notice of his intent to utilize leave benefits mandated by the FMLA by Byther obtaining FMLA certification paperwork from his doctor, providing the same to the Village's Human Resources Department on or about January 28, 2022, and being told that his FMLA leave paperwork was in order following his submission.

   **ANSWER: Defendants deny the allegations contained in Paragraph 85.**

86. Byther's termination was done with the knowledge, and with the consent and approval, and direction of Defendant.

   **ANSWER: Defendants lack knowledge or information sufficient to form a belief as to which Defendant Plaintiff is referring to and therefore deny the allegations contained in Paragraph 86.**

87. Defendant Beck-Fulgham in her official capacity denied Byther the FMLA benefits to which he was entitled in January 2022 by terminating his employment in February 2022 while he was still on FMLA leave.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 87.**

88. Defendants Beck-Fulgham and the Village caused Byther to suffer damages as a result of its interference with his FMLA rights, including job loss, benefits, pay and salary, and health insurance.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 88.**

### COUNT III – 29 U.S.C. § 2615 - FMLA – RETALIATION
### Byther v. Defendants Village and Beck-Fulgham

89. Plaintiff realleges each paragraph of this Complaint as if fully restated here.

**ANSWER:** **Defendants restate their Answers to each paragraph of this Complaint as if fully restated here.**

90. The FMLA creates a direct private right of action for employees such as Byther to sue for redress for violations of the Act. See 29 U.S.C. § 2617(a)( 2).

**ANSWER:** **Defendants admit the FMLA creates a private right of action for employees to sue for redress for violations of the Act and deny the remaining allegations contained in Paragraph 90.**

91. The FMLA provides for rights of action against employers as well as against individuals acting in the interest of employers. See 29 U.S.C. § 2611(4)(A); see, e.g., *Freemon v. Foley*, 911 F.Supp. 326, 330 (N.D. Ill. 1995); *Katz v. Northwest Orthopaedics and Sports Medicine*, 2020 WL 1986965, *9 - 10 (N.D. Ill. 2020) (endorsing an economic realities test to determine individual liability under the FMLA).

**ANSWER:** **Paragraph 91 contains a legal conclusion to which no answer is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraph 91.**

92. To make a claim for retaliation under the FMLA, a plaintiff must plead and prove that his employer took an adverse action against his because of his activity protected under the FMLA. See, e.g., *Burnett v. LFW, Inc.*, 472 F.3d 471, 482 (7th Cir. 2006); see 29 U.S.C. § 2615.

**ANSWER:** **Defendants admit the allegations contained in Paragraph 92.**

13

93. At all times relevant, Byther was an FMLA-eligible employee because he was employed by Defendant for more than 12 months before he requested leave in February 2022 and had worked more than 1,250 hours for Defendant Village during that same period.

**ANSWER:** **Defendants admit Byther was employed by the Village for more than 12 months in February 2022 and had worked more than 1,250 hours for the Village during that same period and deny the remaining allegations contained in Paragraph 93.**

94. Defendant Village is an employer within the meaning of the FMLA.

**ANSWER:** **Defendants admit the allegations contained in Paragraph 94.**

95. Defendant Beck Fulgham has at all times been a person acting in the Village with respect to its employees who exercise complete supervisory control over all aspects of Byther's terms and conditions of employment, as well as the manner of his work performance.

**ANSWER:** **Paragraph 95 contains a legal conclusion to which no answer is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraph 95.**

96. Byther was entitled to take FMLA leave in January 2022 because he was an eligible employee and had not exhausted his twelve weeks of leave authorized by the Act.

**ANSWER:** **Defendants admit Byther had not exhausted twelve weeks of leave authorized by the Act and deny the remaining allegations contained in Paragraph 96.**

97. Byther provided sufficient notice of his intent to utilize leave benefits mandated by FMLA by obtaining FMLA certification paperwork from his doctor and receiving an FMLA-approved leave following his submission.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 97.**

98. While Byther was advised of his termination in a letter from Beck-Fulgham, such termination was done with the knowledge, and with consent and approval, and direction of the Village Defendant.

**ANSWER:** **Defendants admit the allegations contained in Paragraph 98.**

99. Defendant Beck Fulgham, in her official capacity denied, Byther the FMLA benefits to which he was entitled in January 2022 by terminating his employment on February 22, 2022.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 99.**

100. Defendant Beck Fulgham in her individual capacity denied Byther the FMLA benefits to which he was entitled in January 2022 by terminating his employment on February 22, 2022.

ANSWER: Defendants deny the allegations contained in Paragraph 100.

101. Defendant Beck-Fulgham and the Village set upon a concerted course of unlawful conduct, forcing Byther out of his position as Director of Public Works and as a public works' employee by relying on ginned-up, trumped-up, bases that were pretextual litigation figments to justify removing his as Director of Public Works and terminating his employment with the Village.

ANSWER: Defendants deny the allegations contained in Paragraph 101.

102. Defendants Beck-Fulgham and the Village caused Byther to suffer damages due to their interference with his FMLA rights, including job loss, benefits, pay and salary, and health insurance.

ANSWER: Defendants deny the allegations contained in Paragraph 102.

**COUNT IV – DUE PROCESS VIOLATION**
**Plaintiff v. Defendants Village and Beck-Fulgham**

**Paragraphs 103 – 108 are addressed in Defendants' Motion to Dismiss Counts I, IV, V, VI and VII and therefore no answer is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraphs 103 -108.**

**COUNT V– IHRA BASED ON RETALIATION**
**Byther v. Village of University Park, Illinois**

**Paragraphs 109 – 121 are addressed in Defendants' Motion to Dismiss Counts I, IV, V, VI and VII and therefore no answer is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraphs 109 - 121.**

**COUNT VI – 42 U.S.C. § 1983 DEPRIVATION BASED ON ASSOCIATIONAL RETALIATION**
**Byther v. All Individual Defendants**

**Paragraphs 122 – 127 are addressed in Defendants' Motion to Dismiss Counts I, IV, V, VI and VII and therefore no answer is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraphs 122 -127.**

**COUNT VII—MONELL CLAIM (ASSOCIATIONAL RETALIATION)**
**Byther v. Village of University Park, Illinois**

**Paragraphs 128 – 138 are addressed in Defendants' Motion to Dismiss Counts I, IV, V, VI and VII and therefore no answer is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraphs 128 - 138.**

## COUNT IX DEFAMATION
### Byther v. Individual Defendants

**139.** Byther incorporates by reference each of the above paragraphs as if fully set forth herein.

**ANSWER:** **Defendants incorporate by reference their Answers to each of the above paragraphs as if fully set forth herein.**

**140.** Defendants Roudez III and Beck-Fulgham, each and collectively, made several false and defamatory remarks about Plaintiff including in summary:

  a. Byther and Wilson were having an extra-marital affair and

  b. Byther was stealing from the Village.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 140 and each subpart thereof.**

**141.** Defendants Roudez III's and Beck-Fulgham's statements are defamatory on their face because they are so obviously and materially harmful to Byther in that the defamatory statements above impute a want of integrity by alleging that he committed a crime that is punishable as a felony or that Byther was having an extra-marital affair when he is married.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 141.**

**142.** The full extent of the third parties to whom Defendants Roudez III and Beck-Fulgham published the defamatory statements will be discovered further during discovery.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 142.**

**143.** The defamatory meaning of each of the above-described false and defamatory statements and their references to Plaintiff were understood by the above-referenced third parties to mean that Byther lacks integrity, steals from the Village, and cheats on his wife.

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 143 and therefore deny same.**

**144.** Byther is informed and believes, and thereon alleges, that Defendants Roudez III and Beck-Fulgham by herein described acts, negligently, recklessly, and intentionally caused several unsolicited internal and external publications of defamation, of and concerning Plaintiff, to third persons.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 144.**

**145.** The above defamatory statements were understood as assertions of fact, and not as opinion.

Byther is informed and believes this defamation will continue to be negligently, recklessly, and intentionally published and foreseeably republished by Defendants Roudez III and Beck- Fulgham and foreseeably republished by recipients of Defendants' publications, thereby causing additional injury and damages for which Plaintiff seeks redress by this action.

**ANSWER:** Defendants deny the allegations contained in Paragraph 145.

146. These specific statements are not susceptible to an innocent interpretation and were made with the intent to inflict serious personal and professional harm.

**ANSWER:** Defendants deny the allegations contained in Paragraph 146.

147. In acting as described above, Defendants Roudez III and Beck-Fulgham did not publish these statements in the public concern, but rather, published these fictitious and injurious statements without consent, legal justification, legitimate cause, or any other legal excuse.

**ANSWER:** Defendants deny the allegations contained in Paragraph 147.

148. As a direct and proximate result of the wrongful acts of Defendants Roudez III and Beck- Fulgham, Plaintiff has suffered and continues to suffer emotional distress, humiliation, mental anguish, and embarrassment, as well as the manifestation of physical symptoms.

**ANSWER:** Defendants deny the allegations contained in Paragraph 148.

**COUNT X– INDEMNIFICATION**
**Byther v. Defendant Village**

149. Byther incorporates by reference each of the above paragraphs as if fully set forth herein.

**ANSWER:** Defendants incorporate by reference their answers to each of the above paragraphs as if fully set forth herein.

150. Defendant Village is obligated to assume financial responsibility for the actions committed by its officials or employees.

**ANSWER:** Defendants deny the allegations contained in Paragraph 150.

**AFFIRMATIVE DEFENSES**

**Affirmative Defense 1: Plaintiff fails to state a claim for FMLA interference or retaliation.**

1. Plaintiff was not eligible for FMLA leave.

17

2. Plaintiff did not provide sufficient notice of his intent to take FMLA leave to his employer.

3. Emotional distress and punitive damages are not recoverable under the FMLA.

4. Plaintiff was terminated for reasons unrelated to leave under the FMLA.

**Affirmative Defense 2: Plaintiff failed to bring his claim within the statute of limitations.**

1. Byther failed to bring this action within one year of the date his cause of action for defamation accrued as required by 745 ILCS 10/8-101.

**Affirmative Defense 3: Defendants are immune from liability under the tort immunity act.**

2. The Village is a local public entity as defined by the Illinois Tort Immunity Act, 745 ILCS 10/1-206.

3. Ernestine Beck-Fulgham is an employee as defined by the Illinois Tort Immunity Act, 745 ILCS 10/1-202.

4. Joseph Roudez III is an employee as defined by the Illinois Tort Immunity Act, 745 ILCS 10/1-202.

5. Beck-Fulgham and Roudez are not liable for an injury caused by their negligent misrepresentation or the provision of information orally, in writing or by electronic means while acting in the scope of their employment pursuant to 745 ILCS 10/2-210.

6. Beck Fulgham and Roudez are not liable for an injury resulting from their acts in determining policy when acting in the exercise of such discretion, even if abused pursuant to 745 ILCS 10/2-201.

7. In the alternative to denials made herein, statements made by Beck-Fulgham and Roudez III were non-actionable opinions.

8. In the alternative to denials made herein, statements made by Beck-Fulgham and Roudez III were privileged.

9. In the alternative to denials made herein, statements made by Beck-Fulgham and Roudez III were substantially true.

10. In the alternative to denials made herein, statements made by Beck-Fulgham and Roudez III were not made with actual malice.

                                                                              Respectfully submitted,

                                          By: */s/ Lauren M. DaValle*
                                                    One of their Attorneys

Michael J. McGrath
Lauren M. DaValle
ODELSON, MURPHEY,
FRAZIER & MCGRATH, LTD.
3318 West 95th Street
Evergreen Park, IL  60805
Ph: (708) 424-5678

mmcgrath@omfmlaw.com

Ldavalle@omfmlaw.com