UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DARRELL BYTHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 23 C 5807 |
| | ) | |
| ERNESTINE BECK-FULGHAM, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendants Village of University Park and Ernestine Beck-Fulgham's motion for summary judgment. For the reasons set forth below, the motion is granted.

## BACKGROUND

### I. Factual Background

In resolving a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The following facts are taken from the record and are undisputed unless otherwise noted.

Defendant Village of University Park ("Village") appointed Plaintiff Darrell Byther as Director of Public Works on April 8, 2019. Defendant Ernestine Beck-Fulgham was the Village Manager and Byther's direct supervisor. She held ultimate

authority for employee discipline, performance management, and termination decisions for department heads, and served as the final decision-maker for Family and Medical Leave Act ("FMLA") leave determinations.

In late August 2021, Dr. Dionna Lomax diagnosed Byther with depression and anxiety of "moderate severity" and prescribed Valium. On November 22, 2021, Dr. Lomax added Wellbutrin.

In November 2021, Byther informed the Village's Deputy Clerk, Jacelia Kelly, that he would be taking FMLA leave. The parties dispute the details of that conversation. Defendants assert that, based on Byther's representations, Kelly believed his leave was to care for his sick mother. Byther separately testified that his leave request was for his own serious health condition. The form provided was the Certification of Health Care Provider for Family Member's Serious Health Condition.

On January 25, 2022, Dr. Lomax signed the certification. She certified that Byther was unable to perform his job functions from January 31 through February 28, 2022. Dr. Lomax characterized Byther's condition that day as "global dysfunction." Dr. Lomax omitted her business address, telephone number, fax number, and email from the certification, and acknowledged at her deposition that the form as submitted was incomplete.

On January 28, 2022, Byther returned the certification to Kelly. According to Byther, upon receipt of the certification Kelly said, "I'll see you in a month," leading

Byther to believe his FMLA leave had been approved. Byther did not return to work after January 28.

During the first week of his claimed leave, Byther physically assisted his 100-pound mother-in-law by lifting her into the tub or shower, bathing her, dressing her, returning her to bed, and feeding her.

On January 31, 2022, at Beck-Fulgham's direction, Kelly emailed Byther acknowledging receipt of his "FMLA request" and "FMLA form," noting that the Village understood he would be using sick time, and directing him to submit a formal written request identifying the beginning and ending dates of leave. The Village Policy Manual required department heads like Byther to submit an Employee Leave Request Form before taking leave. Byther contends that he never saw the January 31 email because his Village email was accessible only through Village-issued devices that he had turned off after Kelly's "see you in a month" statement. Byther further contends that he called Kelly between February 3 and February 5, 2022, and stated he would supplement the information at his next appointment with Dr. Lomax.

On February 2, 2022, Beck-Fulgham emailed Village department heads stating: "Mr. Byther is on FMLA Leave from 1/31/2022 to 2/28/2022." It is undisputed that Byther was not copied on this email and did not see it contemporaneously. It is also undisputed that Beck-Fulgham wrote "Byther on FMLA" by hand on the certification form, and that Byther did not see the notation contemporaneously. Beck-Fulgham

3

testified that she never spoke with Byther about his FMLA leave, and never informed him in writing whether the request was approved or denied.

On February 3, 2022, Beck-Fulgham sent Byther a certified letter directing him (1) to provide his physician's telephone number, address, email, fax number, and medical license number by February 18, 2022, and (2) to submit a formal written request for leave. Byther neither submitted an updated certification before the February 18 deadline nor submitted a formal Employee Leave Request Form.

Defendants contend that Beck-Fulgham expressed dissatisfaction with Byther's performance before his leave request and that performance and insubordination issues escalated in the weeks before his leave, including: (1) allowing non-CDL drivers, including himself, to operate snowplows on January 2, 2022; (2) argumentative, sarcastic, or defiant responses to Beck-Fulgham's directives between January 4 and January 14, 2022; and (3) taking time off without submitting time-off requests on October 30, 2020, and January 7, 2022.

On February 22, 2022—twenty-five days after Byther submitted his certification and four business days after the February 18 cure deadline—Beck-Fulgham terminated Byther by letter. The termination letter listed sixteen alleged deficiencies, including incidents dating back to November 26, 2019. Among the stated grounds were a violation of "Article VII: Application Procedures For Vacation and Sick Leave" and failure to appropriately request time off.

## II.    Procedural History

Byther filed his original complaint on August 31, 2023, and his First Amended Complaint on June 26, 2024, asserting six counts.  Only Counts I (FMLA interference) and II (FMLA retaliation) remain.[1]  Defendants now move for summary judgment on both.

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotations and citation omitted).  "[T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita*, 475 U.S. at 586 (citation modified).

---

[1] Byther voluntarily withdrew Count III (due process violation) and Count IV (whistleblower claim) of the First Amended Complaint.  Dkt. # 47; Dkt. # 48.  The Court subsequently granted Defendants' motion to dismiss Count V (defamation), leaving the Village and Beck-Fulgham as the remaining defendants.  Dkt. # 57.  Because the Court grants summary judgment on Byther's federal claims, the Court does not have subject matter jurisdiction over Count VI (indemnification) and thus declines to exercise its supplemental jurisdiction over Byther's state law claim.  28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction [if] the district court has dismissed all claims over which it has original jurisdiction."); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

## **DISCUSSION**

### I. Interference

To prevail on an FMLA interference claim, an employee must show that "(1) he was eligible for FMLA protections; (2) his employer was covered by the FMLA; (3) he was entitled to take leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) his employer interfered with, restrained or denied FMLA benefits to which he was entitled." *Juday v. FCA US LLC*, 57 F.4th 591, 595 (7th Cir. 2023) (internal quotations omitted). Even where an interference is shown, the plaintiff must also establish that he was prejudiced by the violation. *Ziccarelli v. Dart*, 35 F.4th 1079, 1084 (7th Cir. 2022).

Defendants do not dispute that Byther was FMLA-eligible or that the Village was a covered employer. The parties contest the remaining elements. The Court need only address elements three and four to determine the outcome of this case. On this record, no reasonable jury could find for Byther on either of these elements.

### A. Entitlement to Leave

The threshold question is whether Byther was "entitled to take leave under the FMLA." *Juday*, 57 F.4th at 595. The Court assumes for the purposes of this order that Byther's condition qualifies as a "serious health condition" within the meaning of the FMLA. However, even if Byther could establish a serious health condition, his entitlement claim fails for the independent reason: he did not submit a complete and sufficient medical certification despite an extended opportunity to cure. The employee

6

bears the burden of submitting a "complete and sufficient" certification to substantiate the need for FMLA leave. 29 C.F.R. § 825.305(c); *Miller v. Express, LLC*, 2021 WL 3737734, at \*12 (N.D. Ill. 2021). A certification is "incomplete" if "one or more of the applicable entries have not been completed." 29 C.F.R. § 825.305(c). The regulations expressly authorize an employer to require the "name, address, telephone number, and fax number of the health care provider and type of medical practice/specialization." 29 C.F.R. § 825.306(a)(1).

The certification submitted on January 28, 2022, was facially incomplete. Dr. Lomax did not provide her business address, telephone number, fax number, or email, and she admitted at her deposition that the form as submitted was incomplete. The certification thus omitted three categories of information—address, telephone, and fax—expressly authorized for collection by 29 C.F.R. § 825.306(a)(1). Byther characterizes the omissions as a "technical defect" and asserts the missing information was obtainable through a Google search or the Illinois Department of Financial and Professional Regulation's license verification system. The regulations, however, place the burden on the employee, not the employer. Nothing in Section 825.305 or Section 825.306 requires the employer to conduct outside research to perfect a deficient certification submitted by an employee. The point of the cure regulation is that the employer "shall advise an employee whenever the employer finds a certification incomplete or insufficient, and shall state in writing what additional information is necessary to make the certification complete and sufficient." 29 C.F.R. § 825.305(c).

7

Once that notice issues, the regulation gives the employee—not the employer—the obligation to provide additional information. *Id*.

The Village complied with its cure obligation. On February 3, 2022, Beck-Fulgham sent Byther a certified letter notifying him that the certification was incomplete, specifying the additional information needed, and providing until February 18, 2022—a fifteen-day window that exceeded the seven-day minimum required by Section 825.305(c). Byther does not dispute that he received the February 3 letter. He also does not dispute that he never submitted a corrected certification—either by February 18 or at any time thereafter. Byther offers three responses, none of which create a triable issue.

First, Byther contends he called Kelly between February 3 and February 5 and told her he would supplement at his next appointment with Dr. Lomax. This phone call does not satisfy his cure obligation. The regulation requires submission of "the additional information," 29 C.F.R. § 825.305(c), not a promise to do so on an unspecified future date.

Second, Byther argues that the February 3 letter demanded information beyond what the regulation authorizes—specifically, the physician's email and medical license number. The Court agrees that Section 825.306(a)(1) does not list email or medical license number as required certification entries. But that observation does not assist Byther. He provided none of the information the letter requested—neither the regulatorily authorized items (address, telephone, fax) nor the additional items (email,

8

license number).  A request that exceeds regulatory authority in part does not excuse the failure to provide the information the regulation indisputably authorizes.  *See Lohmeier v. Gottlieb Mem'l Hosp.*, 147 F.4th 817, 830 (7th Cir. 2025) (employee bears burden to provide complete certification).  Because Byther took no affirmative steps to obtain any of the requested information, he cannot now claim that the inclusion of two non-authorized items in the cure letter relieved him of the obligation to provide the authorized ones.

Finally, Byther's "wrong form" argument is similarly unavailing.  The certification submitted was a Certification of Health Care Provider for Family Member's Serious Health Condition rather than the form for an employee's own condition.  Byther correctly observes that certification forms are "optional" under 29 C.F.R. § 825.306(b).  But that observation only underscores that the form's title was not itself the problem.  The problem was that the substantive information required by the regulations—including the physician's complete contact information—was missing.  For these reasons, Byther cannot establish that he was entitled to leave under the FMLA.

### B. Sufficiency of Notice

Even if Byther completed the certification, the notice element his FMLA interference claim provides an independent ground for summary judgment.  An employee must provide at least thirty days' advance notice when the need for leave is foreseeable, or "as soon as practicable" when it is unforeseeable.  29 C.F.R.

§ 825.302(a). An employer "may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave," and "[w]here an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied." 29 C.F.R. § 825.302(d). In this case, Byther's notice was insufficient on two grounds.

First, Byther submitted his certification on Friday, January 28, 2022, for leave to begin the next business day, January 31, 2022. That is one business day's notice, not thirty. The undisputed evidence establishes that the need for leave was foreseeable: Byther informed Kelly as early as November 2021 that he would be taking FMLA leave "shortly." Dkt. # 98, at 3. Byther offers no evidence—and identifies no unusual circumstance—explaining why he could not have submitted the certification, or at least notified the Village of specific dates, in the more than two months between his November 2021 notice and his January 28 submission.

Second, Byther did not comply with the Village's usual and customary procedural requirements. The Village Policy Manual required department heads to complete an Employee Leave Request Form and submit it to the Village Manager before taking leave. Byther was familiar with this form and does not contend that the requirement was anything other than usual and customary. He was directed to submit the form on January 31, 2022, and again on February 3, 2022, and was counseled about

10

the requirement on prior occasions, including in connection with unauthorized absences on October 30, 2020, and January 7, 2022. He submitted no such form.

Byther argues that his certification—which contained dates of incapacity (1/31/2022 to 2/28/2022) and dates of treatment (11/2/2021 to 5/2/2022)—satisfied this requirement. The certification contains two distinct date ranges spanning different periods. As the Seventh Circuit has explained, the FMLA "does not authorize employees on leave to keep their employers in the dark about when they will return." *Gilliam v. United Parcel Serv., Inc.*, 233 F.3d 969, 971 (7th Cir. 2000). An employer is not required to guess how much leave an employee will need. The Employee Leave Request Form served precisely that disambiguation function, and Byther's failure to submit it left the Village without clear notice of either the duration of leave or whether Byther intended to use accrued paid leave concurrently. *See* 29 C.F.R. § 825.207(a).

Byther also argues that he never saw the January 31 email directing him to submit the form because his Village email was accessible only through Village-issued devices that he had turned off. The Court accepts that contention for purposes of summary judgment. It does not change the result. Byther does not dispute that he received the February 3 certified letter, which again directed him to submit the form. Nor does he dispute that he was counseled on the form requirement multiple times during his tenure as Director. And the regulation's accommodation for "unusual circumstances" does not extend to a self-imposed unavailability that the employee chose without first

11

confirming his leave was approved. *Righi v. SMC Corp.*, 632 F.3d 404, 410 (7th Cir. 2011) (employee's failure to remain reachable doomed FMLA claim).

## II. Retaliation

To prevail on a FMLA retaliation claim, an employee must show that "(1) he engaged in FMLA-protected activity; (2) his employer took an adverse employment action against him; and (3) there is a causal connection between the two." *Petrakos v. City of Chicago*, 147 F.4th 787, 800 (7th Cir. 2025). The plaintiff must ultimately establish that his protected activity was the but-for cause of the adverse action. *Lohmeier*, 147 F.4th at 830. To survive summary judgment, he must point to evidence permitting a reasonable inference that he was fired because he requested or took protected leave. *Tibbs v. Admin. Off. of the Ill. Cts.*, 860 F.3d 502, 505 (7th Cir. 2017). Defendants do not dispute that Byther's firing was an adverse employment action. The retaliation claim nonetheless fails on the first and third elements.

### A. Protected Activity

Byther's retaliation claim stumbles at the threshold. An employee does not engage in FMLA-protected activity if he does not qualify for FMLA leave. *See Tatum v. 10 Roads Express, LLC*, 760 F. Supp. 3d 615, 622–23 (N.D. Ill. 2024). For the reasons set forth in Part I, Byther was not entitled to FMLA leave. Because Byther cannot establish that he engaged in protected activity, his retaliation claim fails as a matter of law.

**B. Causation**

Even assuming Byther engaged in protected activity, no reasonable jury could find that the activity was the but-for cause of his termination. The Court considers the evidence as a whole, including suspicious timing, differential treatment, and evidence of pretext. *See Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 764-75 (7th Cir. 2016). On this record, the evidence does not permit a reasonable inference of retaliation.

Byther's principal argument is that the termination letter constitutes direct evidence of retaliatory motive because it cited his failure to appropriately request time off. But the FMLA distinguishes between firing an employee for taking protected leave and firing an employee for failing to follow the employer's legitimate procedural requirements. As the Seventh Circuit has explained, "[f]iring an employee for failing to communicate about her leave is different from firing an employee for taking that leave." *Simpson v. Off. of the Chief Judge of the Cir. Ct. of Will Cnty.*, 559 F.3d 706, 714 (7th Cir. 2009). An employee's belief that his leave was FMLA-qualifying does not insulate him from discipline for insubordination or failure to follow established policy, even where that conduct relates to a leave request. *See Ridings v. Riverside Medical Center*, 537 F.3d 755, 772 (7th Cir. 2008) ("An employer cannot be deemed to retaliate against an employee by asking her to fulfill her obligations under the FMLA."). The Seventh Circuit has repeatedly upheld terminations grounded in an employee's failure to follow established notice and procedural requirements for leave. *See Gilliam*, 233 F.3d at 971; *Brown v. Auto. Components Holdings, LLC*, 622 F.3d

685, 690 (7th Cir. 2010). The reference to Byther's failure to request time off in accordance with Village policy is therefore not evidence of retaliation for taking leave.

Byther relies on the closeness in time between his certification and his termination—twenty-five days. Suspicious timing alone, however, is rarely sufficient to survive summary judgment; the plaintiff must ordinarily present additional evidence that the employer's stated reasons are pretextual. *Tibbs*, 860 F.3d at 505; *Lutes v. United Trailers, Inc.*, 950 F.3d 359, 369 (7th Cir. 2020). The timing here is not suspicious in any event. During the interval between Byther's submission and his termination, he failed to respond to the Village's January 31 and February 3 directives, failed to submit a required Employee Leave Request Form, failed to cure the deficient certification by the February 18 deadline, and remained absent from work. He was terminated four business days after that deadline passed. The sequence reflects the Village acting on Byther's failure to satisfy its procedural requirements rather than on his request for leave.

Nor do Byther's remaining arguments establish pretext. To show pretext, Byther must demonstrate that the Village's stated reasons were not merely mistaken but were a dishonest cover for retaliation. *Tibbs*, 860 F.3d at 506. Byther emphasizes that the termination letter recited stale incidents dating to 2019 and 2020 and that the Village departed from its progressive discipline policy. But it is undisputed that Byther's performance and insubordination problems predated his leave request, and a record of performance issues preceding protected activity does not supply circumstantial

14

evidence of retaliation. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 221 (7th Cir. 2015). Byther himself acknowledged that Beck-Fulgham was critical of his performance before he ever requested leave. As to the progressive discipline policy, the policy provided that a first offense "may" result in a written warning and suspension and that a second "may" result in discharge. That permissive language did not strip Beck-Fulgham—the official with ultimate authority over discipline and termination of department heads—of discretion to terminate an appointed supervisor. A deviation from a discretionary internal guideline, standing alone, is not evidence that the stated reasons were lies.

Viewing the evidence as a whole and in the light most favorable to Byther, the record would not permit a reasonable jury to conclude that his request for FMLA leave caused his discharge. Defendants are therefore entitled to summary judgment on the retaliation claim as well.

### **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment [54] is granted. Judgment is hereby entered in favor of Defendants. Civil case terminated.

It is so ordered.

Dated: June 3, 2026

Charles P. Kocoras
United States District Judge

15